**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**SOUTHERN DIVISION**

| | |
|---|---|
| JAMES SPROWL and PHILIP S. FRIEDMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> MARRIOTT INTERNATIONAL, INC., <br><br> Defendant. | Case No.: <br><br><br><br> **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs James Sprowl and Philip S. Friedman ("Plaintiffs"), individually and on behalf of a class of persons similarly situated (the "Class" or "Class Members"), bring this class action against Defendant Marriott International, Inc. ("Marriott" or "Defendant") seeking equitable relief and damages as set forth below.

## PRELIMINARY STATEMENT

1.      On or about November 30, 2018, Marriott revealed publicly that its reservations database for Starwood properties, which include Sheraton, Westin and St. Regis hotels, among others, had been hacked and that up to 500 million guests could be affected. According to Marriott, an unauthorized party had accessed the database since 2014 and the breach ("Breach") included names, email addresses, phone numbers, passport numbers, birthdays, and payment information.

2.      Plaintiffs have made reservations with Starwood properties during the relevant time period, and upon information and belief have had their personal identification information ("PII" or "Private Information") stolen.

3.      Plaintiffs bring this action on behalf of themselves and other similarly situated customers who had their PII stolen as a result of Defendant's failure to adequately protect it.

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is founded upon 28 U.S.C. § 1332(d) (Class Action Fairness Act) in that this is a putative class action with more than 100 class members, more than $5 million in controversy, and the requisite diversity of citizenship.

5.      Venue is appropriate pursuant to 28 U.S.C. § 1391.  A substantial portion of the events and conduct giving rise to the violations alleged in this complaint occurred in this District.

6.      This court has personal jurisdiction over Defendant because it has substantial and continuous contacts with this forum, the events giving rise to this matter arose out of those contacts, and Defendant maintains its principal place of business and its corporate headquarters in this District.

## PARTIES

7.      Plaintiff James Sprowl is a citizen and resident of Ohio and is a participant in the Starwood Preferred Guest Program and has participated in the program during the relevant time period.

8.      Plaintiff Philip Friedman is a citizen and resident of the state of Maryland and is a participant in the Starwood Preferred Guest Program and has participated in the program during the relevant time period.

2

9.     Defendant Marriott International, Inc. is a Delaware corporation with its headquarters and principal place of business in this District at 10400 Fernwood Road, Bethesda Maryland 20817.

## STATEMENT OF FACTS

10.     According to Marriott, it received an alert on September 8, 2018 from an internal security tool that there had been an unauthorized attempt to access its Starwood guest reservation database.

11.     Marriott subsequently learned through investigation that there had been unauthorized access to the Starwood network since 2014, and that an unauthorized party has copied and encrypted information, and taken steps towards removing it.

12.     On November 19, 2018, Marriott decrypted the information and determined that the contents were from the Starwood guest reservation database. That database contains reservation information for W Hotels, St. Regis, Sheraton Hotels & Resorts, Westin Hotels & Resorts, Element Hotels, Aloft Hotels, The Luxury Collection, Tribute Portfolio, Le Méridien Hotels & Resorts, Four Points by Sheraton, and Design Hotels that participate in the Starwood Preferred Guest (SPG) program.  Starwood branded timeshare properties are also included.

13.     Although its investigation is ongoing, Marriott believes that the Breach involved information on up to approximately 500 million guests who made a reservation at a Starwood property.

14.     According to Marriott, for approximately 327 million of these guests, the information included some combination of name, mailing address, phone number, email address, passport number, Starwood Preferred Guest ("SPG") account information, date of birth, gender, arrival and departure information, reservation date, and communication preferences.

15.     For other affected guests, the information also included payment card numbers and payment card expiration dates, but the payment card numbers were encrypted. Marriott has not been able to rule out the possibility that the payment information was successfully decrypted.

16.     Plaintiffs became aware of the Breach through news reports on or November 30, 2018.

17.     Prior to September 2018, Plaintiffs stayed at one or more of Defendant's hotels that, upon information and belief, utilized the Starwood guest reservation database.

18.     Plaintiffs allege upon information and belief that Defendant's substandard security practices was a direct and proximate cause for the Breach, which compromised the PII of millions of Americans.

19.     As a direct and proximate result of Defendant's actions and omissions in disclosing and failing to protect Plaintiffs' PII, Plaintiffs have been damaged.

20.     Plaintiffs and Class Members have also been placed at a substantial risk of harm in the form of credit fraud or identity theft and will likely incur additional damages in order to prevent and mitigate credit fraud or identity theft.  In addition to fraudulent charges and damage to their credit, Plaintiff and Class Members spent or will spend substantial time and expense (a) finding fraudulent charges; (b) cancelling and reissuing cards; (c) purchasing credit monitoring and identity theft prevention services; (d) attempting to withdraw funds linked to compromised, frozen accounts; (e) removing withdrawal and purchase limits on compromised accounts; (f) communicating with financial institutions to dispute fraudulent charges; (g) resetting automatic billing instructions; and (h) paying late fees and declined payment penalties as a result of failed automatic payments.

21.    Additionally, Plaintiffs and the Class Members have suffered or are at increased risk of suffering from the loss of the opportunity to control how their PII is used and the diminution in the value and/or use of their PII entrusted to Defendant.

## CLASS ALLEGATIONS

22.    Plaintiffs bring this complaint on behalf of themselves and the following Class ("Nationwide Class"):

> All persons whose personal information was compromised as a result of the data breach disclosed by Marriott on November 30, 2018.

23.    The Class and definition specifically excludes: (a) any persons or other entity currently related to or affiliated with Defendant; (b) any Judge presiding over this action and members of his or her family; and (c) all persons who properly execute and file a timely request for exclusion from the Class.

24.    Class-wide adjudication of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

25.    *Numerosity*: The members of the putative Class, estimated at 500 million, are so numerous that joinder of individual claims is impracticable.  Members of the Class can be readily identified through Defendant's records.

26.    *Commonality*: There are significant questions of fact and law common to the members of the Class.  These issues include but are not limited to:

a.    Whether Defendant failed to establish appropriate administrative, technical and physical safeguards to ensure the security and confidentiality of records to protect against known and anticipated threats to security;

b.      Whether the security provided by Defendant was satisfactory to protect customer information as compared to industry standards;

c.      Whether Defendant misrepresented or failed to provide adequate information to customers regarding the type of security practices used;

d.      Whether Defendant's conduct was intentional, willful or negligent;

e.      Whether Defendant violated any and all statutes and/or common law listed herein;

f.      Whether the putative Class suffered damages as a result of Defendant's conduct or omissions; and

g.      Whether Class Members are entitled to injunctive, declarative and monetary relief as a result of Defendant's conduct.

27.     *Typicality*: Plaintiffs' claims are typical of the claims of the putative Class. Plaintiffs and all members of the putative Class have been adversely affected and damaged in that Defendant failed to adequately protect their private information to the detriment of Plaintiffs and the putative Class.

28.     *Adequacy of Representation*: Plaintiffs, as the proposed Class Representatives, will fairly and adequately represent the putative Class because they have the Class Members' interest in mind, because their individual claims are co-extensive with those of the Class, and because they are represented by qualified counsel experienced in class action litigation of this nature.

29.     *Superiority*: A class action in this instance is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the putative Class is impracticable.  Many members of the Class are without the

financial resources necessary to pursue this matter.  Even if some members of the Class could afford to litigate their claims separately, such a result would be unduly burdensome to the courts in which the individualized cases would proceed.  Individual litigation increases the time and expense of resolving a common dispute concerning Defendant's actions toward an entire group of individuals.  Class action procedures allow for far fewer management difficulties in matters of this type and provide the unique benefits of unitary adjudication, economies of scale and comprehensive supervision over the entire controversy by a single judge in a single court.

30.     The putative Class may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because Defendant has acted on grounds generally applicable to the putative Class, thereby making final injunctive relief and corresponding declaratory relief appropriate with respect to the claims raised by the Class.

31.     The putative Class may also be certified pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because questions of law and fact common to Class Members will predominate over questions affecting individual members, and a class action is superior to other methods for fairly and efficiently adjudicating the controversy and causes of action described in this Complaint.

## COUNT I

### *NEGLIGENCE*

### (Brought on Behalf of Nationwide Class)

32.     Plaintiffs repeat and reaffirm the assertions of fact contained in the forgoing paragraphs as though fully set forth herein.

33.     Marriott owes numerous duties to Plaintiffs and the other members of the Class. These duties include duties:

    a.   to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.   to protect Private Information in its possession using reasonable and adequate security procedures that are compliant with industry-standard practices; and

    c.   to implement processes to quickly detect a data breach and to timely act on warnings about data breaches, including promptly notifying Plaintiff and the other members of the Class of the Breach.

34.    Marriott knew or should have known the risks of collecting and storing Private Information and the importance of maintaining secure payment systems. Marriott knew or should have known of the many breaches that targeted other businesses in the years before the Breach.

35.    Marriott knew or should have known that its reservation systems did not adequately safeguard Plaintiff's and the other Class members' Private Information.

36.    Marriott breached the duties it owes to Plaintiffs and Class members in several ways, including:

    a.   failing to implement adequate security systems, protocols and practices sufficient to protect customer Private Information and thereby creating a foreseeable risk of harm;

    b.   failing to comply with the minimum industry data security standards during the period of the data breach; and

    c.   failing to timely and accurately disclose to customers that their Private Information had been improperly acquired or accessed.

37.     But for Marriott's wrongful and negligent breach of the duties it owed to Plaintiffs and the other Class members, their Private Information would not have been compromised.

38.     The injury and harm that Plaintiffs and the other Class members suffered was the direct and proximate result of Marriott's negligent conduct.

39.     The law also imposes an affirmative duty on Marriott to timely disclose the theft of the PII so that Class Members can be vigilant in attempting to determine if any of their accounts or assets have been stolen through identity theft. Through its failure to provide timely and clear notification of the data breach to consumers, Marriott negligently prevented Class Members from taking meaningful, proactive steps to investigate possible identity theft. As a direct and proximate cause of failing to use appropriate security practices, Marriott's system was hacked causing Plaintiffs' and all Class Members' PII to be disseminated to unauthorized individuals.

40.     The breach of the security system caused direct and substantial damages to Plaintiffs and Class Members, as well as the possibility of future harm through the dissemination of private information and possibility of credit fraud or identity theft.

41.     For all the reasons stated above, Defendant's conduct was negligent and departed from reasonable standards of care including, but not limited to: failing to adequately protect the PII; failing to conduct regular security audits; failing to provide adequate and appropriate supervision of persons having access to Class Members' PII; and failing to provide Class Members with timely and sufficient notice that their sensitive PII had been compromised.

42.     Neither Plaintiffs nor the other Class Members contributed to the data breach or subsequent misuse of their PII as described in this Complaint. As a direct and proximate result of

Defendant's actions and inactions, Plaintiffs and every member of the Class has been put at risk of credit fraud or identity theft.  Defendant is also liable to those Class Members who have directly sustained damages as a result of identity theft or other unauthorized use of their Private Information.

## COUNT II

### *NEGLIGENCE PER SE*

**(Brought on Behalf of Nationwide Class or, Alternatively, Texas Subclass)**

43.     Plaintiffs reallege, as if fully set forth, the allegations of the preceding paragraphs.

44.     Pursuant to the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the personal information, including credit card information, of Plaintiffs and Class Members.

45.     The FTCA prohibits "unfair … practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect personal information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

46.     Defendant solicited, gathered, and stored personal information, including credit card information, of Plaintiffs and the Class Members to facilitate sales transactions which affect commerce.

47.     Defendant violated the FTCA by failing to use reasonable measures to protect personal information of Plaintiffs and the Class Members and not complying with applicable industry standards, as described herein.

48.     Defendant's violation of the FTCA constitutes negligence per se.

49.     Plaintiffs and the Class Members are within the class of persons that the FTCA was intended to protect.

50.     The harm that occurred as a result of the Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class Members.

51.     As a direct and proximate result of Defendant's negligence per se, Plaintiffs and the Class Members have suffered, and continue to suffer, damages arising from the Breach.  For instance, Class Members' accounts have been cancelled, suspended, or otherwise rendered unusable as a result of the Breach and resulting fraudulent charges.  Class Members have also had to pay late fees and spend valuable time and effort scrutinizing their accounts, and communicating with their financial institutions to dispute fraudulent charges.

## COUNT III

### *BREACH OF IMPLIED CONTRACT*

### (Brought on Behalf of Nationwide Class)

52.     Plaintiffs reallege, as if fully set forth, the allegations of the preceding paragraphs.

53.     When Plaintiffs and Class Members provided their PII to Defendant in making reservations, they entered into implied contracts by which Defendant agreed to protect their PII and timely notify them in the event of a data breach.

54.     Defendant invited its customers, including Plaintiffs and the Class Members, to make purchases at its locations using payment cards in order to increase sales by making purchases more convenient.

55.     An implicit part of the offer was that Defendant would safeguard the PII using reasonable or industry-standard means and would timely notify Plaintiffs and the Class Members in the event of a data breach.

56.     Defendant also affirmatively represented that it would continually review and enhance security after a prior data leak.

57.     Based on the implicit understanding and also on Defendant's representation, Plaintiffs and the Class Members accepted the offers and provided Defendant their PII.

58.     Plaintiffs and Class Members would not have provided their PII to Defendant had they known that Defendant would not safeguard their PII as promised or provide timely notice of a data breach.

59.     Plaintiffs and Class Members fully performed their obligations under the implied contracts with Marriott.

60.     Defendant breached the implied contracts by failing to safeguard Plaintiff's and Class Members' PII and failing to provide them with timely and accurate notice when their PII was compromised in the data breach.

61.     The losses and damages Plaintiffs and Class Members sustained described herein were the direct and proximate result of Defendant's breaches of its implied contracts with them.

## COUNT IV

### *INVASION OF PRIVACY*

**(Brought on Behalf of Nationwide Class)**

62.     Plaintiff and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

63.     Defendant invaded Plaintiff's and the Class Members' right to privacy by allowing the unauthorized access to Plaintiff's and Class Members' PII and by negligently maintaining the confidentiality of Plaintiff's and Class Members' PII, as set forth above.

64.     The intrusion was offensive and objectionable to Plaintiff, the Class Members, and to a reasonable person of ordinary sensibilities in that Plaintiff's and Class Members' PII was disclosed without prior written authorization of Plaintiff and the Class.

65.     The intrusion was into a place or thing which was private and is entitled to be private, in that Plaintiff's and the Class Members provided and disclosed their PII to Defendant privately with an intention that the PII would be kept confidential and protected from unauthorized disclosure.  Plaintiff and the Class Members were reasonable to believe that such information would be kept private and would not be disclosed without their written authorization.

66.     As a proximate result of Defendant's above acts, Plaintiff's and the Class Members' PII was viewed, printed, distributed, and used by persons without prior written authorization and Plaintiff and the Class Members suffered damages.

67.     Defendant is guilty of oppression, fraud, or malice by permitting the unauthorized disclosure of Plaintiff's and the Class Members' PII with a willful and conscious disregard of Plaintiff's and the Class Members' right to privacy.

68.     Unless and until enjoined, and restrained by order of this Court, Defendant's wrongful conduct will continue to cause Plaintiff and the Class Members great and irreparable injury in that the PII maintained by Defendant can be viewed, printed, distributed, and used by unauthorized persons.  Plaintiff and Class Members have no adequate remedy at law for the

injuries in that a judgment for the monetary damages will not end the invasion of privacy for Plaintiff and the Class.

## COUNT V

### *DECLARATORY RELIEF*

**(Brought on Behalf of Nationwide Class)**

69.     Plaintiffs and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

70.     Pursuant to the Declaratory Judgment Act, 28 U.S.C. §2201, *et seq*.; Fed. R. Civ. P. 57, Plaintiff and Class Members request the Court to enter a judgment declaring, *inter alia*, (i) Defendant owed (and continues to owe) a legal duty to safeguard and protect Plaintiff's and Class Members' PII, and timely notify them about any security breach, (ii) Defendant breached (and continues to breach) such legal duties by failing to safeguard and protect Plaintiff's and Class Members' PII, and (iii) Defendant's breach of its legal duties directly and proximately caused the security breach, and the resulting damages, injury, and harm suffered by Plaintiff and Class Members.

## COUNT VI

### *INJUNCTIVE RELIEF*

**(Brought on Behalf of Nationwide Class)**

71.     Plaintiffs and the Class Members incorporate by reference each preceding paragraph as though fully set forth at length herein.

72.     Defendant's above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach have caused (and will continue to cause) Plaintiff and Class Members to suffer irreparable harm in the form of, *inter alia*,

economic damages and other injury and actual harm in the form of, *inter alia,* (i) actual identity theft and identity fraud, (ii) invasion of privacy, (iii) loss of the intrinsic value of their privacy, (iv) breach of the confidentiality of their consumer reports and consumer credit information, (v) deprivation of the value of their consumer credit information, for which there is a well-established national and international market, (vi) the financial and temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages, and (vii) the imminent, immediate, and continuing increased risk of ongoing identity theft and identity fraud. Such irreparable harm will not cease unless and until enjoined by this Court.

73.     Plaintiffs and Class Members, therefore, are entitled to injunctive relief and other appropriate affirmative relief including, *inter alia*, an order compelling Defendant to, *inter alia*, (i) notify each person whose consumer credit information was exposed in the security breach, (ii) provide credit monitoring to each such person for at least six years, (iii) establish a fund (in an amount to be determined) to which such persons may apply for reimbursement of the time and out-of-pocket expenses they incurred to remediate identity theft and/or identity fraud (*i.e.*, data breach insurance), and (iv) discontinue its above-described wrongful actions, inaction, omissions, want of ordinary care, nondisclosures, and the resulting security breach.

74.     Plaintiffs and Class Members also are entitled to injunctive relief requiring Defendant to implement and maintain data security measures, policies, procedures, controls, protocols, and software and hardware systems, including, *inter alia*, (i) engaging third-party security auditors/penetration testers and internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendant's computer systems on a periodic basis, (ii) engaging third-party security auditors and internal personnel to run automated security monitoring, (iii) auditing, testing, and training its security personnel regarding any new or

modified procedures, (iv) conducting regular database scanning and security checks, (v) regularly evaluating web applications for vulnerabilities to prevent web application threats, and (vi) periodically conducting internal training and education to inform internal data security personnel how to identify and contain data security lapses.

75.     If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury in the event Defendant commits another security lapse, the risk of which is real, immediate, and substantial.

76.     The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendant if an injunction is issued. Among other things, if Defendant suffers another massive security lapse, Plaintiffs and Class Members will likely again incur millions of dollars in damages. On the other hand, and setting aside the fact that Defendant have a pre-existing legal obligation to employ adequate customer data security measures, Defendant's cost to comply with the above-described injunction they are already required to implement is relatively minimal.

77.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another security lapse, thereby eliminating the damages, injury, and harm that would be suffered by Plaintiff, Class Members, and the millions of consumers whose confidential and sensitive consumer credit information would be compromised.

## COUNT VII

### *VIOLATION OF MARYLAND CONSUMER PROTECTION ACT,*

### *Maryland Code, Commercial Law Article § 13-101, et seq.*

### (Brought on Behalf of Nationwide Class)

78.     Plaintiffs repeats and reaffirms the assertions of fact contained in the forgoing paragraphs as though fully set forth herein.

79.     Among other things, Maryland's Consumer Protection Act ("MCPA") prohibits "unfair or deceptive trade practices" in a variety of circumstances, including the "sale ... of consumer good … or consumer services." CL §13-303(1). The statute lists various ways of committing unfair or deceptive trade practices.  For example, a violation may involve an affirmative "false ... or misleading oral or written statement ... or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers." CL §13-301(1).  Prohibited representations include representations that "Consumer goods, … or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have," CL §13-301(2)(i), and "Consumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not," CL §13.301(2)(iv).

80.     A violation may also consist of an omission — i.e., a "failure to state a material fact if the failure deceives or tends to deceive." CL §13-301(3). It is not necessary that a consumer actually have been misled or damaged as a result of the practice.  CL §13-302. The Act also prohibits "Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that the consumer rely on the same in connection with … (i) the promotion or sale of any consumer goods…." *Id*. at 13 The Act is to be construed liberally to promote the protection of consumers. CL §§13-105, 13-102(3).

81.     The Act includes an explicit private cause of action since 1973. Chapter 73, Laws of Maryland 1973, codified at CL §13-408. In particular, "any person may bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [the Consumer Protection Act]." CL §13-408(a).

82.     Defendant's business acts and practices alleged herein constitute unfair or deceptive trade practices under the MCPA.

83.     Defendant knew of or should have known of vulnerabilities and defects in its data security systems storing PII of Plaintiffs and Class Members before the Breach, but concealed that information in violation of the MCPA.

84.     Defendant violated the MCPA by failing to disclose and actively concealing known data-security defects, and by otherwise deceiving Plaintiffs and the Class Members.

85.     More specifically, Defendant engaged in unfair or deceptive trade practices by:

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding the adequacy of its data security procedures protecting PII;

- Misrepresenting or omitting material facts to Plaintiffs and the Class Members regarding its failure to comply with relevant state and federal laws designed to protect consumers' privacy and PII; and

- Failing to discover and disclose the data breach to Plaintiffs and the Class in a timely and accurate manner.

86.   These deceptive acts and practices were likely to and did deceive Plaintiff and the Class Members regarding the lack of security protecting their PII.

87.   Defendant intentionally and knowingly misrepresented such material facts with an intent to mislead Plaintiff and Class Members.

88.   Defendant owed Plaintiffs and Class Members a duty to disclose its data-security defects because Defendant possessed exclusive knowledge regarding the vulnerability of the PII, concealed the data security defects from Plaintiff and the Class Members, and made incomplete representations regarding its data security systems while withholding material facts from Plaintiffs and the Class Members.

89.   These representations and omissions were material to the Plaintiffs and Class Members due to the value and sensitivity of the PII.

90.   Plaintiffs and the Class Members suffered ascertainable loss as a result of Defendant's misrepresentations, concealment, and omissions of material information as alleged herein.

91.   As a direct and proximate result of Defendant's violation of MCPA, Plaintiff and Class Members have suffered damages.

92.   Plaintiff seeks an order enjoining Defendant's unfair or deceptive trade practices, and awarding attorneys' fees, and any other just and proper relief available under MCPA.

93.     Maryland has a legitimate interest in applying its laws to adjudicate this dispute and to ensure that its residents comply with its consumer protection laws while conducting business in Maryland.   Upon information and belief, Defendant's security practices were designed, established, and initiated, at least in part from Maryland.  Accordingly, Maryland has significant contacts to the claims asserted by this class so that application of its consumer fraud laws to all class claimants is not arbitrary, capricious, or unfair and is not a violation of due process.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, for himself and Class Members, respectfully requests that (i) this action be certified as a class action, (ii) Plaintiffs be designated the Class Representatives, and (iii) Plaintiffs' counsel be appointed as Class Counsel. Plaintiffs, for himself and Class Members, further request that upon final trial or hearing, judgment be awarded against Defendant, in Plaintiffs' favor for:

(i) compensatory and punitive damages in an amount to be determined by the trier of fact;

(ii) declaratory and injunctive relief (as set forth above);

(iii) attorneys' fees, litigation expenses and costs of suit incurred through the trial and any appeals of this case;

(iv) pre- and post-judgment interest on any amounts awarded; and

(v) such other and further relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of Class Members, respectfully demand a trial by jury on all of his claims and causes of action so triable.

DATED: November 30, 2019

_____
Gary E. Mason
**WHITFIELD BRYSON & MASON LLP**
5101 Wisconsin Avenue NW | Ste 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
Gmason@wbmllp.com

Jeffrey S. Goldenberg (pro hac to be filed)
**GOLDENBERG SCHNEIDER, LPA**
One West Fourth Street, 18th Floor
Cincinnati, OH  45202
Tel:  513-345-8297
Fax: 513-345-8294
jgoldenberg@gs-legal.com

Charles E. Schaffer (pro hac to be filed)
**LEVIN SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA  19106
Tel: 215-592-1500
Fax: 215-592-4663
cschaffer@lfsblaw.com